EMELIE LESLIE, Respondent, *v.* THE KNICKERBOCKER LIFE INSURANCE COMPANY, Appellant.

63
136

27
151

Where a party to a contract, who is entitled to a forfeiture in case of non-performance by the other party of a condition therein, by his own act induces such other to omit strict performance within the time limited, he cannot exact the forfeiture, if the party in technical default, with reasonable diligence, thereafter performs or offers to perform.

Plaintiff's assignor, being assignee of a policy of life insurance issued by defendant, which was in defendant's possession, and being ignorant of the time the premiums fell due, applied, before default, at defendant's office, to a person standing at the cashier's desk, to ascertain; such person did not give the information, but promised that defendant would give notice; this it omitted, although it was its general practice to send notice to its policy holders. It was known to defendant, and talked of at the time that the insured was in poor health. The court, after charging that defendant could not by its own act effect a lapse of the policy, charged, in substance, that, if the promise was made by defendant, and it omitted to perform, with the purpose of procuring a lapse of the policy, its owner had the right, in a reasonable time after the omission, to tender the amount, although the day of payment had then passed, and, if she did so, the policy was kept alive. *Held*, that although the charge did not specifically instruct the jury to find whether plaintiff's assignor, in ignorance, relied upon the promise, and omitted further inquiry, and was induced thereby not to exercise her rights, yet, that this was implied in the charge given; and that the

rule laid down by the court was correct; also, that the evidence was sufficient to authorize the jury to find that the person at the cashier's desk was properly there, and had the right to speak as the representative of defendant; and that the omission to give the notice was with the purpose stated in the charge.

(Argued June 24, 1875; decided October 5, 1875.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department affirming a judgment in favor of plaintiff, entered upon a verdict. (Reported below, 2 Hun, 616; 5 T. & C., 193.)

This action was upon a policy of life insurance issued by the defendant upon the life of James Y. Yates in favor of his wife. She died intestate. Leslie, as subsequent owner of the policy, procured a loan from the company, depositing the policy as security, and subsequently, with the assent of defendant assigned it to Harriet Leslie, who, after the death of the insured, assigned it to plaintiff. The defence was, that the policy lapsed by reason of the non-payment of premium due thereon June 3, 1870. The complaint, after setting forth the policy and the various transfers, alleged, among other things, that in April, 1870, the agent of Harriet Leslie, then the owner of the policy, went to defendant's office ready, willing and prepared to pay the premium, and asked for a statement of the amount thereof, with interest on the loan, and of the time when the premium became due, promising to pay the same when due; that defendant declined to then give such information, but promised to give notice of the time; that said Harriet Leslie had no means of knowing these facts, but relied on and trusted to defendant's promise; that defendant did not give such information or notice, but negligently and willfully omitted so to do; that soon after said agent made further inquiries, when he was told by defendant that the premium fell due June 3, 1870, which then had passed; that he immediately thereon tendered the premium and interest, which defendant refused to accept, claiming that the policy had been canceled because of the non-payment; that on the 3d December, 1870, when the next payment of premium fell due under the policy,

said Harriet Leslie duly tendered the premium and interest then falling due, and that in March, 1871, the insured died.

On the trial defendant's counsel moved to dismiss the complaint upon the opening, which motion was denied, and said counsel excepted. Thomas F. Leslie, a witness for plaintiff, testified that he was agent of Harriet Leslie to pay the premiums on the policy as they fell due ; that not knowing the amount or the time it was due, he called at defendant's office in May, 1870, to ascertain ; he had been advised it fell due sometime in June. He saw a person at the cashier's desk, to whom he had paid premiums on other policies, and made the inquiries, telling him he was prepared to make the payment when due. The person he conversed with promised to send witness the statement. This not being done, witness called again on the seventh June, when he saw the same person who told him the policy had lapsed. The witness offered to pay the premium, but it was refused. The insured at the time was in ill health. This was known to defendant's officers, and at the time he first called inquiries were made as to his health. At the time the payment of the premium was refused, the secretary of the company, upon being remonstrated with by the witness as to the injustice of refusing to continue the policy when the insured was in a condition not insurable, stated that if the witness had come five minutes after twelve o'clock on the third June, when the premium fell due, he would not have received the premium. It was proved that it was the general practice of the company to send notices to policyholders before premiums became due.

The court charged, among other things, that the defendant could not avail itself of a lapse in the policy if procured by its own act, and as to the non-payment of the premium "that the company had no right to do any act which prevented the plaintiff from performing this condition, and if the evidence in this case shows that an officer of this company, having authority, promised to send to plaintiff's agent notice when this payment was due, and of the amount payable upon it, and if, for the purpose of procuring a lapse of the policy,

they omitted to send that notice, then the plaintiff may, within a reasonable time after such omission, tender the amount due upon that policy, even though the day of payment be passed; and if it is found it was within a reasonable time that this tender or offer was made, then this company was bound to take it, and were bound to take the subsequent offer to pay in December, and this policy is alive, and the plaintiff is entitled to recover." To which defendant's counsel duly excepted.

Further facts appear in the opinion.

*Samuel Hand* for the appellant. The non-payment of the premium terminated the contract and all liability of defendant. (*Howell* v. *Knick. L. Ins. Co.*, 44 N. Y., 276; *U. M. L. Ins. Co.* v. *McMillen*, 4 Bigelow, 384; *Lochner* v. *Knick. L. Ins. Co.*, 4 Daly, 512.) Defendant's promise to inform the holder when the premium became due was without consideration and imposed no obligation upon defendant. (*Thorn* v. *Deas*, 4 J. R., 84.) The doctrine of equitable estoppel does not apply. (*Citizens' Bk.* v. *First Nat. Bk.*, L. R., 6 H. L. Cas., 352, 361, 362; *Jordan* v. *Money*, 5 H. L. Cas., 185, 213; *Springsteen* v. *Powers*, 3 Robt., 483; *Shapley* v. *Abbott*, 42 N. Y., 443.) The court erred in refusing to dismiss the complaint. (*Bridge* v. *Payson*, 5 Sandf., 210; *Coffin* v. *Reynolds*, 37 N. Y., 640; 3 Wait's Pr., 79, 89; *Perkins* v. *Giles*, 53 Barb., 342; *Carpenter* v. *Goodwin*, 4 Daly, 89; *Wright* v. *Delafield*, 25 N. Y., 270.) The clerk at the cashier's desk had no power to bind defendant by his promise. (*Morey* v. *N. Y. L. Ins. Co.*, 4 Bigelow, 158.)

*N. C. Moak* for the respondent. Defendant is estopped from pleading or showing a forfeiture or default caused solely by its own act. (*Ripley* v. *Ætna Ins. Co.*, 30 N. Y., 164; *Rowley* v. *Ins. Co.*, 36 id., 550; *Martine* v. *Ins. Co.*, 53 id., 344; May on Ins., 613, 614, 433–436; 2 Story on Con., 976.) The law will not permit defendant to say that its promise was without consideration. (*M. and T. Bk.* v. *Hazard*, 30

N. Y., 226; *Plumb* v. *Catt. M. Ins. Co.*, 18 id., 392.) The agreement to send notice is binding upon the parties as a modification of the terms of the policy. (51 N. Y., 117; 55 id., 505; 26 id., 460; *Howell* v. *Knick. L. Ins. Co.*, 44 id., 285; *Trustees First Bap. Ch.* v. *Bklyn. F. Ins. Co.*, 19 id., 305; L. R., 5 Exch., 296.) The question was properly left to the jury. (*Helme* v. *Phila. L. Ins. Co.*, 61 Penn., 107.) No tender of the premium was necessary. (20 Barb., 509; 50 N. Y., 43.)

FOLGER, J. The complaint alleges that Harriet Leslie, when the owner of the policy, by her agent, applied to the defendant, who had it in possession, to be told when the premium for June, 1870, and the interest on the note given by the insured, would become due; and at the same time promised to pay the same when due. It further alleges, that thereupon the defendant declined at that time to give the information, but promised and agreed to give notice of the time when they would become due and of the amount. This is a substantial allegation of reciprocal promises. As Harriet Leslie was not before that bound to the defendant to pay the premium nor the interest on the note, and did then undertake so to do, there was a consideration furnished for the agreement of the defendant. They were reciprocal promises, and sustained each the other. The defendant did not keep its agreement, according to the allegations of the complaint, whereby, as it is further averred, the plaintiff suffered damage. The other allegations of the complaint need not be recited. (See *Dean* v. *Ætna Life Ins. Co.*, Ct. App., Sept., 1875, Ms.*)

The counsel for the plaintiff, in opening the case to the jury, stated the facts contained and alleged in the complaint. They showed a cause of action, and the motion to dismiss the complaint upon the opening, and upon the allegations in the complaint, was denied without error.

When the plaintiff rested her case the allegation of a promise by Harriet Leslie was not sustained by the evidence;

* 62 N. Y., 462.

and though there was testimony tending to show an agreement by the defendant, it did not have the consideration of her undertaking. But the defendant did not repose upon the denial of the motion then made for a dismissal of the complaint, and went into proofs for the defence. So that all the evidence which appears in the case is to be considered, to determine if there was enough to sustain the verdict of the jury, upon the single view of the case upon which it was left to them by the court. In doing that I will first notice the charge. That gave the case to the jury on this single question: Whether the company had done any act which prevented the owner of the policy from performing the condition precedent of paying the premium and interest when due? The learned judge charged them that if an officer of the company, having authority, made the promise testified to, and omitted to perform it, with the purpose of procuring a lapse of the policy, then the owner of the policy had the right, in a reasonable time after the omission, to tender the amount, although the day of payment had then passed; and that if in such reasonable time a tender was made, and again made when the premium again became due, then the policy was kept alive. This charge did not place the right of the plaintiff upon an agreement to be enforced as an agreement merely, nor upon a technical waiver, nor upon a technical *estoppel in pais*. It placed it upon the purpose of the defendant, sought to be reached by misleading the owners of the policy. It instructed the jury to find whether these things existed, viz.: A promise to send the notice, a purpose to procure the lapse of the policy, a design to effect that purpose by omitting to send the notice, a tender or offer to pay the premium within a reasonable time after lapse; and it laid down the rule of law that, if they were found to exist, then the policy was alive, and the plaintiff entitled to recover; inasmuch as it was by the act of the defendant that the owner of the policy was prevented from paying when due, and inasmuch as the defendant could not by its own act, the owner of the policy being unwilling, produce the state of things which would effect

the lapse of it.   It is to be perceived that the charge does
not specifically instruct the jury to find whether the plain-
tiff's assignor, in ignorance, relied upon the promise, and so
relying omitted to push inquiry; that is to say, was induced
by the promise to lie by, and not exercise her rights.   But
this was implied in the instruction that the defendant could
not, by its own act, effect a lapse, and the jury must have
understood that the fact must exist, that it was alone the act
of the defendant which brought about the result.   That the
charge was so understood by counsel, appears from the
omission to make request to further charge, or to take specific
objection to any lack in the charge given.

There is no doubt that the rule laid down by the court is
correct.   One, who by the terms of a contract is entitled to a
forfeiture thereof to his own benefit on the occurrence of a
certain fact or omission, which may be prevented by action
taken in time by the other party to the contract, may not
intentionally so act as to put the other off his guard, and induce
him to refrain from preventive action.   A forfeiture so induced
will not prevail, if the party in technical default, with reason-
able speed, performs or offers to perform the omitted act.
It is a fraud and deceit upon the party thus to put him off
his guard, which may not prevail to destroy his rights.

Even if there be no primary hostile purpose in the action
of one, who may in a certain event, become entitled to a
forfeiture or other right arising from the non-performance
of a condition, if by his act he has induced another to omit
strict performance, he may not take the benefit or exact the
forfeiture.

Thus, where a lessee had covenanted to insure in the names
of his lessor and himself to the amount of two-thirds the
value, and there was a further provision in the lease that if
he omitted to do so, the lessor might insure and collect the
premium paid, as rent; the lessor on one occasion had stated
the covenant in general terms to be that the lessee should
insure the premises, and, if no insurance, the lessor to be at
liberty to insure; the tenant omitted to insure, and the land-

lord insured for £800, which, it was claimed, was not a two-thirds value; the tenant afterward insured for the same amount in his own name. This was claimed to be a breach of the covenant, and it was held that there was no dispensation of the condition; but it was left to the jury whether the conduct of the lessor was not such as to induce a cautious and reasonable man to suppose that he was doing enough if he insured to the amount of £800 in his own name. If they so found the lessor was not to recover possession of the demised premises for a forfeiture of the lease. (*Doe ex dem. Knight* v. *Rowe*, 2 Car. & Payne, 246.) This was a *nisi prius* case, but the principle is elsewhere recognized. See *West* v. *Blakeley* (2 Man. & Gr., 729, 750), where it is said by Tindal, Ch. J.: "If the lessor had himself occasioned the breach, that would have been an answer to the complaint founded on that breach; not on the ground of an agreement, but because the act complained of would have been the act of the lessor himself." (And see page 752.)

*A fortiori*, where there enters into the act an intent to mislead for the purpose of obtaining the benefit. Thus, if a lease provide for a license in writing before some act can be done by a lessee, if he do the act relying upon a parol license and thus a forfeiture be worked, equity will relieve under circumstances of fraud, if the parol license was used as a snare. (*Richardson* v. *Evans*, 3 Mad., 218; see, also, *Jones* v. *Walker*, 13 B. Mon., 165, and cases cited there.)

It is now left to be seen whether there was the evidence upon which this charge and this verdict could be based.

There was no doubt, if the testimony is to be credited, that some person did promise Leslie, the witness, to send to him a statement of amount and time when the premium would be due; and the inference was plain that he relied upon that statement and was induced thereby to omit inquiry. The jury might also find that that person was the representative of the defendant and spoke with authority. The transaction was in its office during its business hours, and clerks were at their places in regular and customary employment. That person

stood at the cashier's desk where Leslie had before paid to him premiums on policies. It is not to be inferred that he was a stranger and an interloper, or that he was not one used to be in that place for all that kind of duty. It is plain that he had knowledge of the affairs of the defendant, and of this policy and its adjuncts; for he first, spoke of the interest past due upon the note, which should have been paid at the last semi-annual payment. He had a right, it appeared, to receive from policyholders payment of premiums, and to ascertain the amount and time of payment thereof. It was shown that it was the general practice of the company, before the day of payment, to send out notices to policyholders, and the address of Leslie was left and taken so that notice might be sent to him. The duty at the cashier's desk was intrusted to but three of the clerks of the defendant, neither of whom was called to show lack of authority to engage to carry out this practice; nor was there any evidence given by defendant to that end. It was not beyond the province of the jury to infer from all of this that the person who was at the cashier's desk was properly there, and had a right to engage that the general practice of the defendant in giving notice should be continued and kept up with Leslie. It is beyond question that there was an omission to send notice; thus, as to this policy at this time, suspending the general practice, and failing to keep the particular engagement. It was shown that the defendant had information of the ailing condition of the insured, and that inquiry was made for his health when Leslie was at the office; that his ill-health was spoken of at the office as a matter of business; to enforce the rules, if the premium was not paid. It is to be inferred that this general practice to send notices was in the usual course of business with the defendant. It is then to be inferred that this would not have been departed from by subordinates unless by affirmative and particular direction from superiors, and for some particular reason, and with a definite purpose. It was not, then, a strained inference that it was for the purpose named in the charge and found by the jury.

The offer to pay in a short time after the premium of the third of June was due, and again on the third of 'December was shown. There was, then, enough in the testimony to warrant the learned judge in his charge to the jury, and them in their verdict. And hence it also appears that the court was not in error in refusing the motion to dismiss made at the rest of the plaintiff's case and again at the close of all the proofs.

It is said that there was no allegation in the complaint that the omission to send notice was with the purpose found by the jury. There was no such objection to the admission of the testimony; and moreover the complaint avers a willful and wrongful omission.

There was an exception to the admission of testimony of the custom of the defendant as to receiving payment of premiums after the day. As the case went to the jury on the sole ground above considered, and they were distinctly charged that there was no proof on which they could find a verdict of waiver, it is manifest that the defendant was not harmed by that testimony. It could have had no effect in producing the verdict.

The judgment should be affirmed.

All concur.

Judgment affirmed.