GEORGE M. KENYON AND OTHERS, RESPONDENTS, *v.*
KNIGHTS TEMPLARS AND MASONIC MUTUAL
AID ASSOCIATION, APPELLANT.

*Questions as to the occupation of an applicant for insurance — the company is estopped
from controverting the truth of answers written by, and at the suggestion of, its own
agent — it cannot enforce a forfeiture where it, by its former acts, induced the insured
to omit strict performance.*

This action was brought upon a certificate of membership issued by the defendant,
a corporation organized in the State of Ohio, and having its place of business in
Cincinnati, by which it agreed to pay to the heirs of one Kenyon $5,000 within
sixty days after satisfactory proof of his death. It was defended upon the ground
that the answers made by him to certain questions contained in the application
as to his profession or occupation, and as to whether he was engaged in any way
in the retailing of alcoholic liquors, were untrue.

It appeared from the evidence, given by the defendant's agent upon the trial,
that the application in question was drawn up and the answers to the
interrogations were inserted by the agent; that the answer to the question under
consideration was inserted by the defendant's agent, at his own suggestion, as to
the form and language employed, and with the understanding that it did,
and the intent that it should, truthfully describe the kind of business in which
Kenyon was then engaged; that the mistake in the answer to that question, if
the answer was incorrect, was the mistake of the defendant's agent and not the
mistake of Kenyon; that Kenyon fully and fairly informed the defendant's

agent as to the nature of his business and that he sold alcoholic liquor in the manner proved on the trial, and that there was no fraud or collusion on his part. *Held*, that the defendant was estopped from controverting the correctness of Kenyon's answers, or the interpretation which was given to them when made.

Between August 17, 1883, and February 27, 1885, fifteen assessments on this certificate were made by the defendant, all of which were paid by Kenyon by sending to the defendant by mail his check on the Watertown National Bank, payable to the order of the defendant's secretary. An assessment for four dollars and seventy-five cents having been made on March 27, 1885, Kenyon, on April fourth, sent his check for that sum, there being then sufficient funds in the bank to meet it, precisely as he had paid all the former assessments. On April tenth a second notice was sent to Kenyon asking him to remit by check, postal order or express order, to which he replied that he had paid that assessment April fourth, and had defendant's receipt for it. April fifteenth the defendant replied that there must be a mistake as they had the receipt, and could find no trace of having received a remittance, and asked him to return the receipt. Before he received this letter Kenyon died suddenly. The certificate of insurance required the payment of an assessment to be made at the office of the association, at Cincinnati, within ten days after notice, unless otherwise expressly agreed in writing. The notice requiring the payment of the assessment stated: "Assessments are payable at this office in cash, by sight drafts on Cincinnati or N. Y. banks, money order, or American or U. S. Express money orders."

*Held*, that Kenyon was justified, by the course of dealing between the parties, in regarding the sending of his check as equivalent to sending a sight draft on a Cincinnati or New York bank, or an express money order, and that the defendant was estopped, by its acts and course of dealing with Kenyon, from claiming that such check was not equivalent to a sight draft, at least so far as to prevent the defendant from claiming that this certificate was forfeited by reason of the non-payment of that assessment.

Where a party to a contract, who is entitled to a forfeiture in case of the non-performance by the other party of a condition therein, by his own act induces such other party to omit strict performance within the time limited, he cannot exact the forfeiture if the party in technical default, with reasonable diligence, thereafter performs or offers to perform.

APPEAL from a judgment in favor of the plaintiffs, entered at the Jefferson Circuit, upon the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the justice present at the trial.

The action was brought upon a certificate of life insurance, which provided, among other things, that "if any assessment shall not be paid within ten days after notice as provided in the by-laws for the payment thereof, at the office of this association, in the city of Cincinnati, O. (unless otherwise expressly agreed in writing), or to

the agents when they produce such receipts so signed as aforesaid, then and in every such case this association shall not be liable for the payment of said sum of five thousand dollars, nor any part thereof, and this certificate shall cease and determine."

The notice requiring the assessment to be paid in this case provided: "Assessments are payable at this office in cash, by sight drafts on Cincinnati or N. Y. banks, money order, or American or U. S. Express money order (the latter cost only five cents), payable to Charles Brown, Secretary."

*John Lansing*, for the appellant.

*John C. McCartin*, for the respondents.

MARTIN, J.:

This action was upon a certificate of membership or insurance issued by the defendant, whereby it agreed to pay to the heirs of Alexander M. Kenyon $5,000 within sixty days after satisfactory proof of death. The defendant resists the plaintiff's claim on the ground that certain statements contained in the application of Kenyon were untrue; also on the ground that the last assessment made by the defendant was not paid by him.

The alleged untruthfulness of statement relied upon was in the answers to the following questions: "3. Profession or occupation, state precise nature of business. Importer and wholesale dealer in wines and liquors. 7. *a.* Are the habits of said party at the present time, and have they always been, sober and temperate? *a.* Yes. *b.* Does the party use intoxicating drinks habitually as a beverage? *b.* No. *c.* Is the person engaged in any way in the retailing of alcoholic liquors? *c.* No; keep no bar and sell only at wholesale; have government and town license."

The defendant claims that at the date of such application the habits of Kenyon were not and had not always been sober and temperate, and that at that time he habitually used intoxicating drinks as a beverage. Upon these two questions there was a conflict in the evidence, and the jury found in the plaintiffs' favor. With that finding we are satisfied and think it should be regarded as final. The defendant also claims that Kenyon was at the time when such answers were made engaged in retailing alcoholic liquors, and hence

that his answer to that branch of the question was untrue and his certificate consequently void. That Kenyon was engaged in selling alcoholic liquors by the barrel, bottle, quart, pint, and perhaps in smaller quantities, is abundantly established by the evidence; that he kept no bar and was not engaged in the business of selling by the drink is equally well established. Whether he was engaged in retailing alcoholic liquor, and whether under the evidence that question was one of fact or a question of law, are questions which we deem it unnecessary to decide in this case.

The undisputed proof was that one Bolles was the defendant's agent. On the trial Bolles testified: "I was the agent of the defendant and took this application; it is all in my handwriting except the signature; it was written in Kenyon's office at his store; did not see his license; cannot tell what has been erased there in the application; I made the erasure myself." Some questions came up as to what the question (being the question under consideration) referred to, and in explanation of it, I erased it and put the answer down just as Mr. Kenyon stated to me; my impression is the answer was first written yes, but cannot swear to it; I recollect there was talk at that time between me and Kenyon about the sale of liquor; I talked with Mr. Kenyon at that time about selling liquor over a bar; told him we could not write an applicant in the society that was engaged in that business, selling liquor over a bar or hotel; there was something said in the explanation to me by him of selling by the measure, pint, quart, or half pint, but I cannot tell what explanation he made to me, any more than what is recorded there; * * * I did not know his system of selling was by selling in small quantities any more than I saw; I saw him selling liquor there by the measure myself, but the impression I must have had was that it complied with a wholesale dealer; while I was there I saw them selling by the measure, by the bottle; I understood that he was a wholesale dealer from the fact that he did not sell by the drink; on that occasion I saw him selling in the front room by the bottle; there was a good many barrels of liquor there; I went in the back room and there was a large number of barrels filled with different kinds of liquor I supposed; in the front part of the store there was bottles and barrels, and on the other side cigars; I didn't mean by

putting the word in the application 'wholesale' that he did not sell in small quantities by the measure, because I saw him selling liquor there by the measure; I meant by putting in the word 'wholesale' that he didn't sell by the drink; that is the construction I put upon it, that was the distinction I meant with such men as liquor dealers generally; I supposed it was at that time, and don't know the difference now; I understood he had two different licenses; one was a government license from the United States; the principal distinction I had in view was selling over a bar or selling by the drink I knew he was selling by the measure."

From this evidence it not only appears that Bolles was the defendant's agent, but it also appears that the application in question was drawn up and the answers to the interrogations were inserted by him; that the answer to the question under consideration was inserted by the defendant's agent at his own suggestion as to form and language employed, and with the understanding that it did, and the intent that it should truthfully describe the kind of business in which Kenyon was then engaged; that the mistake in the answer to that question, if the answer was incorrect, was the mistake of the defendant's agent, and not the mistake of Kenyon; that Kenyon fully and fairly informed the defendant's agent as to the nature of his business and that he sold alcoholic liquor in the manner proved on the trial; and that there was no fraud or collusion on the part of Kenyon. Under these circumstances, can the defendant now controvert the correctness of this answer? We think not. In *Miller* v. *Phœnix Mutual Life Insurance Company* (12 N. Y. State Rep., 3; 107 N. Y., 296), RUGER, Ch. J., in delivering the opinion of the court in that case says: "It is undoubtedly the general rule that a written contract signed by a party thereto, and containing the terms and conditions of an agreement, is conclusive upon him, and that he will not be permitted to show, in avoidance thereof, that other stipulations were made at the time of or before its execution, which would vary, alter or contradict the provisions of the written instrument. Neither is it generally a defense to an action founded upon such an agreement that the party did not read the contract, or was ignorant of its contents, or that it was prepared by the party claiming the benefit of it, unless he also shows that his signature thereto was obtained by

misrepresentation or fraud.   In the case, however, of life insurance policies, it is the settled doctrine of the modern cases, that where the application for insurance is drawn up by the agent of the insurer, and the answers to the interrogations contained therein are inserted by him at his own suggestion, without fraud or collusion on the part of the assured, the insurer is estopped from controverting the truth of such statements, or the interpretation which it has given to the answers actually made by the applicant, in an action upon the instrument between the parties thereto." In *Mowry* v. *Rosendale* (74 N. Y., 360), HAND, J., in delivering the opinion of the court says: "The principle, that if the statements in the application, relied upon as breaches of warranty, are inserted by the agent for the insurers, without any collusion or fraud upon the part of the insured, the insurer is estopped from setting up their error or falsity as breach of warranty, seems now well settled." In that case it was also held, that it was not necessary, in order to establish the agency, to show that the alleged agent had a written appointment, or had previously acted as agent, or that the defendant knew that the application was filled up by him. If the person who filled up the application is adopted and recognized by the defendant as its agent *in procuring the risk*, this is sufficient, and the doctrine of estoppel applies. (See, also, *Plumb* v. *Cattaraugus Mutual Insurance Company*, 18 N. Y., 392; *Rowley* v. *Empire Insurance Company*, 36 id., 550; *Baker* v. *Home Life Insurance Company*, 64 id., 648; *Maher* v. *Hibernia Insurance Company*, 67 id., 283; *Flynn* v. *Equitable Life Insurance Company*, 78 id., 568; *Grattan* v. *Metropolitan Life Insurance Company*, 80 id., 282, 294; *Bennett* v. *Agricultural Insurance Company of Watertown*, 106 id., 243.) The doctrine of these cases is decisive of the question under consideration. The defendant is estopped from controverting the correctness of Kenyon's answers, or the interpretation which was given them when made; and hence the defendant's policy cannot be avoided upon the ground of the untruthfulness of such answers.

This leads to the consideration of the question whether the certificate issued by the defendant to Kenyon became void by reason of his omission to pay the last assessment made by the defendant. The contract between the parties was, that if any assessment should not be paid within ten days after notice should be served upon

Kenyon, personally or by mail, then the certificate should cease and determine. The certificate on which this action was brought was issued by the defendant May 22, 1882. The defendant is a corporation organized under the laws of the State of Ohio; and its place of business is at Cincinnati in that State. Kenyon resided at Watertown, N. Y. The undisputed proof was that between August 17, 1883, and February 27, 1885, fifteen assessments on this certificate were made by the defendant, and that all of such assessments were paid by Kenyon by sending to the defendant by mail his check on the Watertown National Bank, payable to the order of the defendant's secretary. On March 27, 1885, the assessment in question was made. It was for four dollars and seventy-five cents. On April 4, 1885, Kenyon sent his check for that sum precisely as he had paid all the former assessments made by the defendant. On April tenth a second notice was sent to Kenyon, asking him to remit by check, postal order or express order, to which he replied that he had paid that assessment April fourth, and had defendant's receipt for it. April fifteenth the defendant replied that there must be a mistake somewhere, as they had the receipt, and could find no trace of having received a remittance for the payment of such assessment; and requested him to return the receipt he held, that they might trace the matter up, stating that they would return the same to him. Before the receipt of this letter Kenyon died. His death was sudden and unexpected. There was sufficient funds in the bank to meet this check.

The question presented is, whether, under these circumstances, Kenyon's rights under this certificate were forfeited. If Kenyon had sent the amount of that assessment by sight draft on a Cincinnati or New York bank, or by an express money order, as stated in the defendant's notice, then clearly it would have been a payment and the certificate would not have been forfeited. (*Palmer* v. *Phœnix Mutual Life Ins. Co.*, 84 N. Y., 64, 71.) That it was the intention of these parties that Kenyon should transmit the amount of his assessment, either by check, draft or order, is obvious. Kenyon had uniformly sent by check. The defendant had always accepted this method of payment as sufficient. It had treated Kenyon's check as the equivalent of a sight draft or order. Indeed, in the letter sent Kenyon just prior to his death, the defendant

requested him to send by "bank check." It would certainly be eminently unjust if the defendant should now be permitted to insist that this assessment remains unpaid, and that all Kenyon's rights under this certificate are forfeited because he did not remit the amount of this last assessment by sight draft, post-office or express money order, instead of by bank check, the method which had been so long and so uniformly adopted and accepted by the parties. We think Kenyon was justified by the course of dealing between the parties, in regarding the sending of his check as equivalent to sending a draft or order; and that the defendant is estopped by its acts and course of dealing with Kenyon, from claiming that such check was not equivalent to a sight draft, at least so far as to prevent the defendant from claiming that this certificate was forfeited by reason of the non-payment of that assessment.

Where a party to a contract who is entitled to a forfeiture in case of the non-performance by the other party of a condition therein, by his own act induces such other to omit strict performance within the time limited, he cannot exact the forfeiture if the party in technical default, with reasonable diligence thereafter performs or offers to perform. (*Leslie* v. *Knickerbocker Life Ins. Co.*, 63 N. Y., 27.) In *Insurance Company* v. *Eggleston* (96 U. S., 572, 577), BRADLEY, J., in delivering the opinion of the court in that case says: "Any agreement, declaration or course of action on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract." (*Meyer* v. *Knickerbocker Life Ins. Co.*, 73 N. Y., 516; *Gray* v. *Green*, 9 Hun, 334; *Attorney-General* v. *Continental Life Ins. Co.*, 33 id., 138; *Phœnix Ins. Co.* v. *Doster*, 106 U. S., 30, 34, 35.) Our conclusion is that the certificate in question did not become void by reason of Kenyon's omission to pay such assessment in some other manner than that adopted by him. The defendant contends that the court erred in admitting in evidence the stub of the check sent by Kenyon to the defendant. We do not think so. It was not offered until the defendant's president had testified that it had been altered. This question of alteration was made an issue in the case,

and as bearing upon that issue, and in rebuttal of the evidence of defendant's president, it was admissible. There are no other exceptions requiring special examination, or which would justify a reversal of the judgment herein.

The judgment and order appealed from affirmed, with costs.

HARDIN, P. J., concurred.

FOLLETT, J. (dissenting):

Appeal from a judgment entered on a verdict and heard in this court on a case which contains all of the evidence. The notice of appeal refers to an order denying a motion made on the minutes for a new trial; but such an order is not found in the appeal book. The defendant is incorporated under the laws of Ohio for the purpose of insuring its members, and is authorized to insure in the State of New York. May 22, 1882, the defendant issued to Alexander M. Kenyon, of Watertown, N. Y., a certificate of membership, by which it agreed to pay to the heirs of said Alexander M. Kenyon, $5,000, within sixty days after satisfactory proof of death, provided the dues were paid. April 16, 1885, Alexander M. Kenyon died, leaving the plaintiffs, his children, his heirs and only heirs-at-law, and May 1, 1885, proofs of death were delivered to the defendant.

The certificate was issued upon an application which contains the following provision: " And I do hereby agree that the statements and representations contained in the foregoing application and declaration, shall be the basis of the contract between me and the said association; *the truthfulness of which statements and representations I do hereby warrant; and that if the same or any of them are in any material respect untrue, or if there shall be any omission or neglect to pay any of the assessments on or before the days on which said assessments shall fall due, except as provided for in the days of grace by the by-laws of this association, that then, in either event, the certificate of membership which may be issued hereon shall be void.*" The application also contains the following questions and answers:

" 3. Profession or occupation. State precise nature of business."
" Importer and wholesale dealer in wines and liquors."

\*       \*       \*       \*       \*       \*

" 7. *a.* Are the habits of said party at the present time, and have they always been, sober and temperate ? "

" *a.* Yes."

" *b.* Does the party use intoxicating drinks habitually as a beverage ? "

" *b.* No."

" *c.* Is the person engaged *in any way* in the retailing of alcoholic liquors ? "

" *c.* No ; keep no bar and sell only at wholesale ; have government license and town license."

This action was defended on the grounds : 1. That at the date of said application the habits of said Alexander M. Kenyon were not, and had not always been, sober and temperate. 2. That at the date of said application said Alexander M. Kenyon habitually used intoxicating drinks as a beverage. 3. That at the date of said application said Alexander M. Kenyon was engaged in retailing alcoholic liquors. 4. That March 27, 1885, said Alexander M. Kenyon was assessed $4.75 by assessment No. 59, payable April 6, 1885, which he neglected and refused to pay.

The validity of the first and second defenses depended upon issues of fact which were found against the defendant upon conflicting testimony. The following recital is found upon the clerk's minutes of trial : " The judge presiding at the trial of the action entertained a motion by defendant's attorney upon his minutes at this trial to set aside the verdict and grant a new trial upon exceptions taken upon the trial, because the verdict is for excessive damages and contrary to the evidence and contrary to law, which motion was denied." A formal order denying the motion was not entered. But assuming that this record brings to this court for review the errors of the jury, if any, which may be doubted (*Dart* v. *Gillies,* 14 J. & S., 560; *Howard* v. *Hayes,* 15 id., 89 ; affirmed, 90 N. Y., 643), we must refuse to set aside the verdict upon the ground that the two issues of fact upon which the first and second defenses depend, were found contrary to the evidence.

It is conceded that when the application was signed and certificate issued (May, 1882), the decedent had paid the special tax imposed upon wholesale dealers in liquor by section 3244 of the Revised Statutes of the United States, and also held a store license granted under

the excise laws of this State, authorizing him to sell ales, wines and spirituous liquors in quantities less than five gallons, but not to be drank on the premises.   For fifteen years immediately preceding his death Kenyon had been engaged in the sale of ales, wines and spirituous liquors under like licenses.   It was proved, and not disputed, that during these years he habitually sold ales, wines and spirituous liquors in quantities of five gallons and upwards; and that he also habitually sold by the gallon, quart or pint as called for by his customers.   It was proved, and not disputed, that in some instances purchasers of liquor by the bottle left their bottles in the store, called and drank from them at their pleasure; also that customers and friends drew liquors from the casks into glasses and drank in the presence of decedent and of his clerk, and that in a few instances the clerk received pay for the liquor so drank, but the decedent never personally received pay.   To avoid the effect of this evidence and to induce an interpretation of the contract which would allow a recovery, the plaintiff called Theodore W. Bolles, who testified: "I was the agent of the defendant and took this application; it is all in my handwriting except the signature; it was written in Kenyon's office at his store. * * * Kenyon told me he was selling by the measure, pint, quart or half pint. * * * While I was there I saw them selling by the measure; by the bottle; I understand that he was a wholesale dealer from the fact that he did not sell by the drink. * * * I meant by putting in the application "wholesale" that he didn't sell by the drink; that is the construction I put upon it. * * * The principal distinction I had in view was selling over the bar, or selling by the drink; I knew he was selling by the measure." It does not appear that this information was communicated to defendant.

The extent of the authority or agency of Bolles must be ascertained from his testimony, who said: "I was the agent of the defendant and took this application." From the evidence of defendant's president, who testified: "I remember this application; think it was taken by Mr. Bolles, of Utica, N. Y.; it was transmitted to us by Folsom & Johnson by mail," and from the following provision contained in the application:

"Inasmuch as only the officers at the home office of the association in the city of Cincinnati have authority to determine whether

or not a certificate of membership shall issue on any application, and as they act on the written statements and representations referred to, it is expressly understood and agreed, that no statements, representations or information made or given by or to the person soliciting or taking this application for a certificate of membership, or to any other person, shall be binding on the association, or in any manner affect its rights, unless such statements, representations or information be reduced to writing, and presented to the officers of the association, at the home office in the above application." Whether Bolles took other applications or did other business for the defendant does not appear. At the close of the evidence the defendant moved for a nonsuit, upon the ground that the plaintiffs could not recover because Kenyon was, at the date of his application and at the date of defendant's certificate, engaged in retailing alcoholic liquors, and had continued in such business until his death. The motion was denied, and an exception taken. Defendant moved on the same ground, that a verdict be directed in its favor, which was also denied and an exception taken. The plaintiffs insisted that the knowledge of Bolles should be considered in determining what the parties meant by the words " wholesaler " and " retailer " and that whether Kenyon was the one or the other or both, was a question of fact for the jury.

They urged that the answer, " No; keep no bar and sell only at wholesale; have government license and town license," (together with the knowledge of Bolles), disclosed to the defendant that Kenyon was engaged in the sale of " alcoholic liquors " in the manner authorized by " town license," that is, by the small measure, but was not engaged in selling by the drink over a bar. It was urged, that in May, 1882, but two kinds of licenses could be granted in the city of Watertown for the sale of " alcoholic liquors," to wit: A store-keeper's license, to sell by the small measure, and a hotel-keeper's license to sell by the drink; that the application disclosed that the applicant was not a hotel-keeper, could not be licensed as such, but was licensed to sell in the manner in which he did sell. The negative of this proposition was urged by defendant's counsel, who insisted that the only legal evidence of the contract between the parties was the application and certificate;

that the knowledge of Bolles not communicated to the defendant was irrelevant; and that the interpretation of the contract was a question of law for the court. The court submitted the question to the jury to be determined as a question of fact, to which the defendant excepted. The interpretation of this contract was a question of law for the court. The applicant, in answer to the third question, stated unqualifiedly, that he was an " importer* and wholesale dealer in wines and liquors," and in answer to the seventh question, subdivision c, he said: " No; keep no bar and sell only at wholesale; have government license and town license." Construing these questions and answers, without reference to the testimony of the agent above quoted, it excludes the idea that the applicant was engaged in selling in any manner except by wholesale. The question is answered in the negative, and adds "keep no bar and sell *only at wholesale.*" The plaintiffs urge that the words " keep no bar " and the words " and town license" limit and control the other words of the answer, and fairly disclosed to the defendant the precise nature of the business in which the applicant was engaged. That interpretation gives more force to the inferior and ambiguous than to the superior and unambiguous words of the sentence.

The knowledge of Bolles, the writer of the application, which was not communicated to the defendant, ought not to have been considered in construing this contract. (*Dwight* v. *The Germania Ins. Co.*, 103 N. Y., 341.) In the case cited the application contained the following questions and answers: " *a.* For the party whose life is proposed to be assured, state the business carefully specified? Ans. Real estate and grain dealer. *b.* Is this business his own or does he work for other persons and in what capacity? Ans. His own. *c.* In what occupation has he been engaged during the last ten years? Ans. Real estate and grain dealer. *d.* Is he now or has he been engaged in or connected with the manufacture or sale of any beer, wine or other intoxicating liquors? Ans. No." The application was dated August 22, 1878. The answers were all in the handwriting of Henry C. Hermans. On the back of the application were " Questions to be answered by the agent," which were answered by Hermans in his own handwriting, and signed " H. C. Hermans, Agent." Upon this application, sent by Hermans to the Germania, the policy was issued, mailed to Hermans, who delivered

it, collected and remitted the premium, was paid for his services by the company, and was authorized to collect subsequent premiums. Two days before this, August 20, 1878, Hermans wrote an application to the Home Life Insurance Company, upon which a policy was issued, which contained the following question and answer, the answer being in the handwriting of Hermans: " Q. Has the party been employed or engaged in the manufacture or sale of intoxicating liquors; if so, in what way and when? A. No, except owned hotel about three years; liquors sold by package; no bar." This answer stated the exact truth, as proved and not disputed in the case cited.

Hermans' knowledge of the exact fact, supported by the improbability that the applicant fraudulently misstated or even innocently misstated August twenty-second, in respect to a matter correctly stated August twentieth, in said application to the Home Life Insurance Company, was held to be entitled to no consideration in the interpretation of the contract. At this time Hermans was the duly appointed agent of the Phœnix Life Insurance Company, but held no appointment from the Germania; and then was, at Dwight's request, engaged in obtaining, upon his life, insurance in other corporations. In no other respect do we see any essential difference between the authority of Hermans and the authority of Bolles, or in respect to the effect which their knowledge of the facts should have upon the validity of the contracts entered into by their respective corporations.

Under the evidence it was the duty of the court to have determined whether Kenyon was a wholesaler or a retailer. The signification of English words and phrases is a question for the court. (Greenlf. Ev., § 5.) There was no material dispute over the manner in which Kenyon sold. Had there been an issue of fact over his manner of selling, it would have been proper to have asked the jury to have found the fact — the manner in which sales were made — and the fact being found, it would have become the duty of the court to determine whether he was a wholesaler or a retailer. This duty could have been discharged by instructing the jury that if they found the sales were made in a particular way, he was a wholesaler; but if in a certain other way a retailer, or by directing the jury to render a special verdict or a special finding. The primary and

usual meaning of "wholesale" is the sale of goods in gross to retailers, who sell to consumers. Kenyon sold liquors in gross to retailers, and also in small quantities to consumers. This is undisputed. The evidence does not disclose the extent of either kind of sales; but that is unimportant, as it conclusively appears that retailing alcoholic liquors was an important part of his business.

Kenyon's answers to the third and seventh questions was a warranty that he was a wholesaler, and not a retailer of "alcoholic liquors," which warranty was broken, and defeats the plaintiff's right to recover. The court erred in refusing a nonsuit. The conclusion reached upon this question renders it unnecessary to consider the fourth defense.

The judgment should be reversed and a new trial granted, with costs to abide the event.

Judgment and order affirmed, with costs.